# The Lebanon Mutual Insurance Co. *versus* Erb.

1. The insurance of property, as his own, by one who is the sole beneficial owner of it, though he be not invested with the legal title, is not rendered void by a condition in the policy of insurance providing that, "If the property to be insured be held in trust or on commission or be leasehold or other interest not amounting to absolute or sole ownership . . . . it must be so represented to the company, and expressed in the policy in writing, otherwise the insurance as to such property shall be void."

2. Where an insurance company executes and delivers to one not an agent of the company a policy of insurance, containing an acknowledgement of the payment of the premium, it thus makes him the agent of the company to accept from the assured this particular premium and to deliver the policy. It is therefore no defence to an action on the policy that the company never received the premium, if the assured paid it to the agent who delivered the policy.

3. A policy of insurance upon a tannery building, with the machinery, boiler, engine, etc., occupied and used at the time of the fire in the same manner and for the same purposes as when the insurance was effected, though it be simply by one man to use up some liquor in the vats, will not cease and determine because of the following condition in the policy: "If the property insured be a manufacturing establishment or mill . . . . . and shall cease to be operated, without consent of the company indorsed hereon, this policy shall cease and determine."

4. Waiver of the proof of loss required in a policy may be inferred from any act of the insurer evincing a recognition of liability or a denial of obligation exclusively for other reasons.

5. Proofs of loss are but conditions precedent to the bringing of an action, and not of the insurance, and, if waived, the action may be brought without any effort at compliance with this requirement.

February 18th, 1886.   Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Centre county :* Of January Term, 1886, No. 158.

This was an action of covenant by John Erb against the Lebanon Mutual Insurance Company on a policy of fire insurance issued by defendant to the plaintiff. The defendant pleaded covenants performed *absque hoc.*

The facts as they appeared on the trial of the case before KREBS, P. J., of the 46th Judicial District holding special court, sufficiently appear in the charge of the court and in the opinion of the Supreme Court.

The defendant presented the following points for charge :

1. Under the terms of the policy it was not binding until the actual cash payment of the premium into the office of the company, and as the undisputed evidence is that the premium was not so paid, and was not paid to any appointed agent of the company defendant the policy never took effect, the plaintiff cannot recover and the verdict must be for the defendant.

Answer : We refuse this point for the reason that no contract is stated in this point as is contained in this policy of insurance. (Sixth assignment of error.)

2. It is the undisputed evidence that R. E. Munson & Co. and C. B. Pease were acting solely in the capacity of brokers in effecting this insurance, and that neither of them was an appointed agent of or for the company defendant. They were, as such brokers, the agent of the insured, and not the agent of the defendant. Payment of premium to them was not a payment to the company, the company never having received the premium, the policy in suit is void and the verdict must be for the defendant.

Answer : We have already instructed you on this point in our general charge, but we say again to you, gentlemen of the jury, and that the decision of the Supreme Court in Maryland *v.* Royal Insurance Company is the basis of our reasons for so instructing you, that if this defendant company delivered this policy, in evidence, to C. B. Pease to be delivered by him, upon the payment of the premium, to the assured, and that he did pay that premium in good faith then the defendant company is liable for this policy of insurance. (Seventh assignment of error.)

3. The said policy of insurance on which this suit is brought was issued by the company and accepted by the plaintiff, *inter alia*, on the following condition, which is made part of this policy : Condition 4th : If this property to be insured be held in trust or in common or be leasehold or other interest not amounting to absolute or sole ownership, etc., it must be so

represented to the company, and expressed in the policy in writing, otherwise the insurance as to such property shall be void. It being the evidence in this case that at the time of the issuance of this policy and the time of the fire the plaintiff was not the absolute or sole owner of the property insured, and the verdict must be for the defendant.

Answer: If you find the facts upon this question of the ownership of this property, as testified by John Erb, Mr. Love and Mrs. Erb, then we instruct you that he may recover upon this policy of insurance, and we refuse to affirm this point. (Eighth assignment of error.)

4. The conditions of the policy in suit required that in case of loss the insured within ten days after the fire render a particular account and proof thereof, etc. (see 8th condition); and it being the evidence that at least twenty-six days intervened between the time of the fire and the making of the proof of loss your verdict must be for the defendant.

Answer: We refuse to instruct you as requested on this point. (Ninth assignment of error.)

5. It being the evidence appearing on the face of the policy that the property was insured as a manufacturing establishment, and being operated as such, and that at the time of the fire it was vacated without the consent of the company indorsed on the policy, the policy, if ever in force, had ceased and determined, and the verdict should be for the defendant.

Answer: We have instructed you on this question of occupancy of this property and for the purposes of this case. If you find the testimony of Thomas Weston to be true as it was stated by him on the witness stand we refuse this point. (Tenth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows: . . . . The next point of contention is, as to the occupancy of this property. The policy of insurance says: "On a tannery building and additions, machinery, shafting, belting, tools and apparatus therein, boiler and engine." The policy on its face does not say that the tannery was then being operated. The defendant company contends that it was vacated as a tannery building—that it was not occupied and operated as such, that therefore this policy is void under this clause in the 7th condition of the policy, the language of which condition is this: "This policy will not cover unoccupied buildings, unless insured as such, and if the premises insured shall be vacated without the consent of this company indorsed hereon, or if the property insured be a manufacturing establishment or mill running in whole or in part over or extra time, or running at night, or if the same shall cease to be ope-

rated without the consent of the company indorsed hereon, this policy shall cease and determine."

In support of this condition, the plaintiff has upon his part, under this clause of the 17th condition of this policy, called Thomas Weston, who testified how he had occupied a part of this property as a shoemaker shop.   That he also, while occupying it as such, worked a skin into leather, finished it as he needed the leather in his shop—or a neighbor worked a hide tanned out of some old damaged hides that were left there in the vats at the time the tannery ceased running, which was some considerable time before this property was sold at sheriff's sale.   He testified that he so occupied and used it, from the time that Mr. Erb bought it up until the time this loss occurred.

[For the purposes of this trial, gentlemen of the jury, we instruct you that if you believe this testimony of Thomas Weston, then there was no such a vacation, or non-compliance under this clause of the 17th condition of this policy as would make it null and void.   If that testimony is true—if you believe it to be true—then there could be a recovery in this case by the plaintiff against the defendants for the amount of insurance here claimed.]   (First assignment of error.)

The defendant company also contend that this policy was void because no premium was paid under part of the 5th condition of this policy, which provides " or shall have neglected to pay the premium, then and in every such case this policy shall be null and void."   These are the words of this contract between the parties on this point, and the defendant contends that this policy is void because the money was not paid into and received at the home office of the company.   This point, gentlemen of the jury, we confess, is not free from difficulty in our minds.   There are numerous authorities on this point, but of all the several authorities on the subject there is not one which covers exactly the point in controversy in this case. But it nevertheless becomes our duty to instruct you what we deem the law under this provision or condition of this policy. If you believe the facts as they are proven in this case, the plaintiff, as far as he himself is concerned, has paid the premium. You will notice that the condition is, " or shall have neglected to pay the premium."   This is the whole condition on that point.   To this point the plaintiff calls Mr. Reed, one of the insurance firm of R. E. Munson & Co., of Philipsburg, and by him they present testimony to show that John Erb the insured came to him and solicited insurance upon this building, and that he (Reed) applied to Clifford B. Pease, of Boston, Mass., to have insurance placed upon this building.   It appears from the testimony in this case that neither this insurance agent or

broker, or the firm of R. E. Munson & Co., were the agents of the defendant—The Lebanon Mutual Insurance Company. Mr. Reed also testified that subsequently he received from Mr. Pease this policy of insurance, and that after its receipt, on the very day he gave the policy to Mr. Erb, he received from Mr. Erb the amount of premium specified therein, and remitted the same to Mr. Pease in Boston, less their commission; and in support of that testimony they produce here a receipt from Mr. Pease for the money. The receipt being signed by C. B. Pease, and in signing so the plaintiff alleges he is the agent of the Lebanon Mutual Insurance Company. . . . .

[If you believe the testimony that the Lebanon Mutual Insurance Company delivered this policy to C. B. Pease, to be delivered to John Erb through any agent whatever upon the payment of the premium on this policy, and that John Erb when he got this policy paid the premium to Pease or to others who sent it to Pease, then we instruct you there could be a recovery on this policy of insurance for the amount claimed. But Pease could not have entered into a contract or agency with these parties in this case, and delivered to them this policy without the payment of the premium; if he had done so, it would have been a violation of the rights of the defendants in this case, and there could be no recovery under such a state of facts. We instruct you as a matter of law that this defendant company having placed this policy with this receipt in it in the hands of C. B. Pease, if he received into his hands the premium for the policy upon delivering it to the insured, that the company would be bound by that contract. When they delivered this policy with this receipt in it to Mr. Pease they made him their agent for its delivery, and your verdict, if you find these facts to be true, should be for the plaintiff.]    (Second assignment of error.)

The defendant, however, contends also that the company is not liable because there is no such proof of loss, or notice of loss, made out in this case as is required under the eighth condition of this policy as would make them liable. The eighth condition of this policy reads in this wise: "Persons having a claim under this policy shall give immediate notice thereof to the company, and within ten days thereafter render a particular account and proof thereof, signed and sworn to by them, setting forth, first, a copy of the written portion of this policy and all indorsements thereon; second, other insurance, if any, on the same property, or any portion thereof, with copies of written portion of each policy and indorsements thereon; third, the actual cash value of the subject insured at the time immediately preceding the fire; fourth, the owner-

ship of the property insured and the interest of assured in same; fifth, for what purposes and by whom the building insured, or containing the property insured, and the several parts thereof, were used at the time of the loss; sixth, the date of the loss and the amount thereof; seventh, how the fire originated, as far as said persons know or believe; and it further and finally provides, and until such proofs as above required are produced and examinations and appeals permitted, the loss shall not be payable."

As we understand the position of the defendants in this case it is, first, that there was not given to them the "immediate notice of loss" as this condition requires; secondly, that there was no such formal proof of loss as that required in the first, second, third, fourth and fifth conditions of this policy. Upon these several points the plaintiff produces testimony to show what the facts really were in the case. [The first witness called was Mr. Reed, who testified to you that on the 14th day of August, 1882, he wrote this letter to the Lebanon Mutual Insurance Company: "Gentlemen—The property insured under policy 20934, special No. 1952, was burned August 10th, 1882. The risk was placed by us through C. B. Pease, of Boston, Mass. Please advise what steps we shall take in the matter, and oblige, yours truly, R. Munson & Co." Mr. Reed also testified that he thought he had telegraphed to the company of the loss, but he was not sure. The testimony upon the subject therefore is, that the first notice the insurance company received of this loss was this letter written on the 14th August, 1882, mailed on that day to the Lebanon Mutual Insurance Company, at Jonestown, Pa. There is no denial that the company received this notice, and this letter is produced by them, as we understand, through a notice served on them by plaintiff's counsel in the case. This question, then, that we are requested to instruct you upon, we say to you, that if you believe this letter was received by the company, that under the first part of this eighth condition of this policy there was such notice given such preliminary notice as is required by that condition of this policy, if you find there was a loss at that time.] (Third assignment of error.)

[The second inquiry under this eighth condition is, whether or not the company received such formal proof of loss, and whether they have done anything on their part which would waive their right to require such formal proof of loss as is specified in this eighth condition of this policy. In answer to this letter of August 14th, 1882, D. M. Karmany, special agent of the Lebanon Mutual Insurance Company, writes in these words:

R. E. MUNSON, Esq.—*Dear Sir:* Yours of 14th inst. was

sent to me, and upon examination I find that the premium on No. 20,934, special No. 1952, has not been paid at our office, and therefore no liability could exist; the policy was dated June 5th, 1882; being overdue seventy days ago we could not; under any circumstances, ever take the case under consideration. Respectfully, yours,                 D. M. KARMANY.

We instruct you, gentlemen of the jury, that under the authorities of the Supreme Court as decided, that if that letter was written to R. E. Munson, or to John Erb, or shown to him, then the defendant company have by their act waived the right to receive the formal proof of loss; if you find that such notice had not been given, and that they did not object to this loss because there was no formal proof of loss put in, but that they put it upon the ground that the premium had not been paid, and for that reason refused even to consider it, then we say to you they have waived their right to demand a formal proof of loss, such as is called for in the several clauses of the eighth condition of this policy in evidence.    It is shown, however, on the part of the plaintiff, John Erb, that some time in the beginning of September, 1882, the plaintiff made out a formal proof of loss and sent it on to the company, and the company up to this day, so far as the evidence in the case goes to show, did not object to the deficiency or informality of this proof of loss.]    (Fourth assignment of error.)

[Now, gentlemen of the jury, we think this is about all the instructions we need to give you upon this contract; you must take this testimony and examine it carefully, first, as to whether this property was the property of John Erb, under the instructions we have given you upon that point; second, whether or not it was occupied; third, whether or not the premium was paid to C. P. Pease, and whether or not this policy of the Lebanon Mutual Insurance Company was delivered by the company to C. B. Pease, to be delivered by him to John Erb or his agents, upon the payment of the premium; fourth, whether or not the defendant company waived the right of receiving a formal proof of loss by this letter which is offered in evidence here, and which had been written by their special agent.    If you find these facts to exist, from the evidence in the case under the instructions we have given you, we instruct you to find a verdict for the plaintiff for the amount of this policy, with interest thereon from the 7th day of September, 1882.    If, however, you come to the conclusion that any one of these conditions have not been complied with, or are wanting in the evidence, then your verdict must be for the defendant company.]    (Fifth assignment of error.)

We reserve in this case, gentlemen of the jury, two questions for our future consideration :

: First. Whether or not there was a payment of the premium; whether there was such a payment of the premium as would comply with the condition of this policy so as to make the company responsible, and

Second. Was there such a vacation of the property as to render the policy void.

· These are two questions which we will determine after you have found your verdict, and file a written opinion on the same. We have submitted all questions of facts involved in this case to you, and direct you to make a careful examination of all the evidence in the case, and that you should come to no hasty conclusion, render no verdict until you are clearly satisfied, and render a verdict according to your careful deliberation.

Verdict for the plaintiff in the sum of $1,090, subject to the opinion of the court on the questions of law reserved. The court subsequently directed judgment to be entered on the verdict in favor of the plaintiff on both the questions of law reserved.

Judgment was thereupon entered; whereupon the defendant took this writ, assigning for error the answer of the court to the defendant's points, those portions of the general charge included in brackets, and the order of the court to enter judgment on the verdict for the plaintiff on the points of law reserved.

*Adam Hoy*, (*Alexander & Bower* with him), for plaintiff in error.—1. The plaintiff never paid the company the premium; without this the policy is void.

Mr. Pease, who it appears received the money, was the agent of the plaintiff, and he never paid the company the premium: · Schæffer *v*. Ins. Co., 8 Nor., 296 ; Greene *v*. Lycoming Fire Ins. Co., 10 Id., 389 ; Pottsville Mutual Fire Ins. Co. *v*. Minnequa Springs Co., 4 Out., 137 ; Marland *v*. Royal Ins. Co., 21 P. F. S., 396, does not bear the court out in making Pease the agent of the defendant.

2. When the policy requires that the proofs shall be made out and forwarded to the company within a certain specified time, as ten days, thirty days, three months, or any other speci-fied time, unless such proof is made within that time, or facts shown that establish a waiver of strict compliance, no recovery can be had : Woods on Fire Insurance, § 412, p. 693. Between the 14th and 24th August, the insured made no attempt to make proof of loss, and the company did nothing, said nothing. The proofs not having been made within ten days the company was discharged from liability: . Beatty *v*. Lycoming County Mutual Ins. Co., 16 P. F. S., 17 ; . Diehl *v*. Adams

County Ins. Co., 8 P. F. S., 452; Trask v. Ins. Co., 5 Casey, 198; May on Insurance, 714.

*John H. Orvis*, (*Hastings & Reeder* with him), for defendant in error.—1. The plaintiff had paid the premium.

That when an insurance company places a policy, duly executed and receipted, in the hands of a broker for delivery, it thereby constitutes such broker its agent to receive the premium, is clearly and distinctly ruled by the Supreme Court of Illinois in the case of Lycoming Fire Ins. Co. v. Ward, 8 Ins. L. J., 603; Marland v. Royal Ins. Co., 71 Pa. St., 393; Peoria Sugar Refinery v. Ins. Co., 14 W. N. C., 503.

2. When the company absolutely refused to pay, upon a distinct ground, it was in law and in fact a waiver of all other grounds: Lycoming Insurance Co. v. Schreffler, 6 Wright, 188; Franklin Insurance Co. v. Updegraff, 7 Id., 350; Lycoming Mutual Ins. Co. v. Schollenberger, 8 Id., 259; Buckley v. Garrett, 11 Id., 205; Farmers' Insurance Co. v. Taylor, 23 P. F. S., 342.

The plaintiff was the absolute owner of the property, though by mistake the legal title was vested in another.

3. In the Monroe Co. Mutual Insurance Co. v. Robinson, 5 W. N. C., 389, the Supreme Court in a *per Curiam* opinion, say: " Want of title of the assured is no defense to an action on a policy of fire insurance, if the insured entered upon his land and took his insurance in good faith, under a reasonable and honest belief that he had title, and if he did not withhold the knowledge of a dispute about his title in bad faith": Millville Mutual Fire Insurance Co. v. Wilgus, 7 W. N. C., 24; Kronk v. Birmingham Ins. Co., 8 W. N. C., 53; Farmers & Mechanics Ins. Co. v. Meekes, 10 W. N. C., 307; Penn. Fire Ins. Co. v. Dougherty, 13 W. N. C., 270.

Mr. Justice CLARK delivered the opinion of the Court, March, 15th, 1886.

The Lebanon Mutual Insurance Company, by way of defense, against the payment of this loss, allege : first, the title to the property was not in John Erb; second, the premium for the insurance was not paid ; third, the premises were vacant or unoccupied at the time of the fire ; fourth, the notice of the loss was not given forthwith ; and fifth, the proofs of loss were not forwarded in ten days.

The property insured was a tannery, situate at Port Matilda, in Centre County. The title, it is conceded, had been in one Dr. Myer, from whom, on the 25th of April, 1882, it was sold by the sheriff, and purchased by John G. Love. Before the sheriff's return of the sale, Love agreed to sell the property to

John Erb, the plaintiff below, but, by some blunder, the sheriff returned the property as sold to Elizabeth J. Erb, instead of John Erb, and made the deed to her. John Erb testified that he made the contract with Love for his own benefit, that he paid for it with his own money, and that the letter, which the sheriff says he received, directing the deed to be made in the name of his mother, was not written or authorized by him. Elizabeth J. Erb, his mother, testified that she had no claim, and never pretended to have any claim to the property ; that she neither paid, nor furnished the money to pay for it, and that she never knew the title was in her name until the fact was disclosed during the trial of the cause. This testimony was wholly uncontradicted, and the learned court correctly instructed the jury that if they believed the facts to be as stated, the title of John Erb, for all the purposes of this case, was sufficient. If the facts alleged are assumed, John Erb was, in equity, the absolute and sole owner of the property; he held in trust for no one, but in his own right, and was entitled, at any time, to a conveyance. The title of his mother was the bare legal title, and was to her utterly and absolutely worthless. It was not essential that John Erb should have been invested with the legal title if he was the sole, beneficial owner of the property : Fire Ins. Co. *v.* Wilgus, 7 Norris, 107 ; Penn'a Fire Ins. Co. *v.* Dougherty, 6 Out., 568.

The second ground of defense is equally without merit. One of the conditions of the contract is that " if the assured shall have neglected to pay the premium," the policy shall be null and void. The original negotiation for this insurance was between John Erb and R. E. Munson & Co., general insurance agents and brokers, at Phillipsburgh, Penn. The application and survey were forwarded by R. E. Munson & Co. to Clifford B. Pease, an insurance broker of Boston, Mass., who sent them to the home office of the Lebanon Mutual Insurance Company at Jonestown, Penn. Neither Munson & Co., nor Pease, were the general agents of the defendant company, nor until this time pretended to have any authority to act for or in behalf of the company. On the 5th of June, 1882, the policy in suit, containing an acknowledgment of the receipt of $30, the cash premium, was by the company executed and forwarded to Clifford B. Pease, the Boston broker, who was thus intrusted with the delivery. Although not the agent of the company, in any general sense, he thereby became the agent for this particular purpose upon payment of the premium. The agency is necessarily implied from the nature of the transaction itself ; the policy was placed in his hands for the very purpose of delivery, and the delivery, by its express terms, was conditioned upon payment of the premium ; it is clear, therefore, that the

authority of Pease was limited accordingly. The paper was intrusted to him, as was said in Marland v. Royal Ins. Co., P. F. S., 396, " to be handed over if the premium was paid." The case at bar is readily distinguishable from Pottsville Co. v. Minnequa Springs Co., 4 Out., 137, in this, that it was there stipulated, the insurance, whether original or continued, should not be considered as binding, until the actual cash payment of the premium " into the office of the company "; and also, that the premium in fact never reached the person whom the company had authorized to receive it. The company might have retained the policy until the premium was paid, or they might have sent it directly to the insured, with instructions to remit the amount; in either case, the contract would have been ineffective until the condition of the policy had been complied with. But, they chose to send it to Pease, with an acknowledgement of payment, for delivery to the insured, and this act of the company must be taken as an authorization of Pease to receive the money. We find no case, involving the question of insurance, full and clear upon this point, but the principle is one of general application, and it cannot be doubted that it is applicable here with like force and effect as in other cases.

Another condition of the policy provided as follows:

" This policy will not cover unoccupied buildings (unless insured as such); and if the premises insured shall be vacated without the consent of this company endorsed hereon: or if the property insured be a manufacturing establishment or mill running in whole or in part over or extra time, or running at night, or if the same shall cease to be operated without consent of the company indorsed hereon, this policy shall cease and determine." . The buildings, it is conceded, were not unoccupied, and the first part of the clause quoted is therefore wholly inapplicable to this case. It is contended, however, as the third ground of defense, that the tannery had ceased to be operated as such, and under the remaining portion of this clause the force of the policy has ceased and determined. The application is not in evidence, and the policy does not disclose that the insurance was upon an establishment in operation; it is upon a tannery building with the machinery, boiler, engine, &c. The property at the time of the fire was occupied and used in precisely the same manner and for the same purposes as when the insurance was effected. Thomas Weston states, however, that he occupied a part of the building as a shoemaker shop, up until the time of the fire. He further testified that there was some green bark left, and some liquor in the vats that would have gone to waste, and he bought some half dressed stock hides, and tanned and finished them out, and also some damaged hides that had been left in the vats, and

that some of them were left, a half dozen or so, at the time of the fire; that he occupied the finishing room every week more or less for the purposes stated. Under these circumstances, the court was clearly right in saying to the jury that there was no such non-compliance with the above recited condition of the policy as would defeat the plaintiff's recovery.

As to the fourth and fifth grounds of defence little need be said. The eighth condition of the policy provides: "Persons having a claim under this policy shall give immediate notice thereof to the company, and within ten days thereafter render a particular account and proof thereof, signed and sworn to by them, setting forth, &c." "And until such proofs as above required are produced, and examinations and appeals permitted, the loss shall not be payable." The fire occurred Thursday, 10th August, 1882, and the property was totally destroyed. The plaintiff resided in Phillipsburgh, some twelve miles distant. Hearing of the loss on Monday following 14th August, 1882, he employed R. E. Munson, Esq., to forward formal notice to the company by mail. To this notice the company replied as follows:—

LEBANON, Pa., Aug. 24th, 1882.

R. E. MUNSON, ESQ.,

Dear Sir:—Yours of the 14th inst. was sent to me, and upon examination I find that the premium on No. 20934 spe. 1952, has not been paid at our office, and therefore no liability could exist. The policy was dated June 5th, '82— being over 70 days ago. We could not under any circumstances ever take the case under consideration.

Respectfully yours,

D. M. KARMANY.

The notice of the loss was certainly given within a reasonable time, under the circumstances, and this is all that can be required; and, as the company in their reply expressly repudiate all responsibility for the loss on other grounds, and decline, under any circumstances, even to take the case into consideration, it was certainly unnecessary to furnish any proofs. "Waiver of the proof of loss required in a policy may be inferred from any act of the insurer, evincing a recognition of liability or a denial of obligation, exclusively for other reasons": Pennsylvania Co. *v.* Dougherty, 6 Out., 568; Inland Co. *v.* Stouffer, 9 Casey, 397; Lycoming Co. *v.* Schollenberger, 8 Wright, 259; Home Co. *v.* Davis, 2 Out., 280; Ben Franklin Co. *v.* Flynn et al., Id., 627.

Proofs of loss are but conditions precedent to the bringing of an action, and not of the insurance, and if waived the action may be brought without any effort at compliance with this requirement.

Judgment is affirmed.