## Shearer v. Mutual Fire Insurance Co. of Hummelstown, Pa.

*Practice, C. P.—Statement of claim—Demurrer.*

1. Where a defendant files an affidavit of defense in the nature of a demurrer, the facts appearing from the plaintiff's statement of claim must be regarded as true.

*Insurance — Fire insurance — Cancellation of policy—Reinstatement of policy—Payment by check.*

2. Where an insurance company agrees to reinstate a policy which has been canceled for non-payment of an assessment if the insured will send to the company the amount of such assessment, the insured is bound to send to the company cash or legal tender to the amount of the assessment.

3. In such case, the writing of a check and the depositing of it in a letter-box is not a compliance with the company's requirement, and especially is this the case where the insured does not aver that the check was received by the company and accepted by it in payment of the assessment.

*Insurance—Fire insurance—Defenses—Estoppel.*

4. Where an insurance company has refused to pay a policy for a reason stated, it cannot thereafter, in a suit upon the policy, allege any other reason for non-payment, and especially is this so where the insured has incurred expense and brought suit in the belief that the only objection to payment was that originally stated.

Affidavit of defense in lieu of demurrer. C. P. Dauphin Co., Jan. T., 1927, No. 398.

*I. B. Swartz*, for plaintiff; *Herbert A. Schaffner*, for defendant.

WICKERSHAM, J., Oct. 17, 1927.—In this action, the plaintiff seeks to recover from the defendant the loss which he alleges he sustained by a fire which destroyed certain of his property, which property he claims was insured against loss from fire by the defendant corporation. The defendant filed an affidavit of defense in the nature of demurrer.

The following facts appear from the plaintiff's statement, which, under the pleadings, must be regarded as true, for the purpose of determining the question involved: Davis *v.* Edmondson, 261 Pa. 199. On April 3, 1925, the defendant corporation issued its contract of insurance to Edward G. Shearer, the plaintiff, against all direct loss and damage by fire, to the extent of $2000. The plaintiff failed to pay the 1925 premium or assessment prior to the said loss by fire, whereupon he was notified by the company that, if the assessment was not paid within five days, the policy would be canceled. Pursuant to said notice, the defendant notified the plaintiff that the policy was canceled. On May 18, 1926, the plaintiff wrote the defendant asking what was necessary for him to do to have the policy reinstated. In reply thereto, the company wrote him as follows (see Exhibit "C," attached to plaintiff's statement): "In reply to your letter of May 18th, I beg to advise that if you will send us the amount of your 1925 assessment, $1.95, we will be glad to reinstate your policy. No new policy will be required." Pursuant to said request, the plaintiff wrote a check in the amount of $1.96, enclosed it in an envelope addressed to the Mutual Fire Insurance Company of Hummelstown, Pa., stamped it, and gave it to his wife to put in the mail; that his wife, on June 10, 1926, deposited said letter with said check enclosed in the mail-box at Harrisburg, Pa., at Fourth and Peffer Streets. That the property described in said insurance policy was afterwards, on July 20, 1926, totally burned, consumed, damaged and destroyed by fire. This suit is brought, therefore, to recover the following losses: On grain, $31.75; on hay and straw, $200; on livestock, $115; on farming implements and vehicles, $200, making a total of $546.75.

The plaintiff notified the defendant of the loss, but did not file a proof thereof, as required by the policy, because the defendant denied liability. The plaintiff filed an amended statement which does not materially alter the facts as we have stated them.

In paragraphs seven, eight and nine of defendant's affidavit of defense raising questions of law it is alleged, *inter alia:* "Plaintiff admits the cancellation of said contract because of plaintiff's failure to comply therewith . . . but alleges a renewal or reinstatement thereof, and, as proof thereof, offers Exhibit 'C;' that the allegations of fact set forth in paragraph ten of plaintiff's statement of claim do not show sufficient compliance with requirements of defendant for reinstatement as set forth in Exhibit 'C' to work a renewal of the alleged contract; and defendant, therefore, avers that plaintiff's statement of claim clearly shows that the contract on which this action is attempted to be based was nullified by the acts and omissions of the plaintiff, and no sufficient facts tending to show a renewal of said contract or a waiver of plaintiff's breach have been alleged in plaintiff's statement of claim."

It will be observed in Exhibit "C," attached to plaintiff's statement of claim, the defendant corporation notified the plaintiff that, if he would send to the defendant the amount of his 1925 assessment, $1.95, the company would reinstate his policy. We must take these words in their common and accepted meaning, which is that the plaintiff was to send to the defendant cash or legal tender. In reply to this demand on the part of the defendant, the plaintiff, in his statement of claim, says he wrote his check and mailed it to the company.

At the oral argument of this case before the court *in banc,* counsel for the plaintiff insisted that the action of the plaintiff in mailing his check was in full compliance with the demand of the company. He relies upon the case of Pennsylvania Lumbermen's Mutual Fire Ins. Co. *v.* Meyers, 126 Fed. Repr. 352. In that case, however, the defendant wrote the plaintiff that, if he still desired the policy to be again put in force, he should send *check* for the full amount by return mail, which the plaintiff did the same day and before the destruction of the buildings insured. It was held: "Where an insurer offered to reinstate policies which had been canceled for failure of insured to pay premiums, provided insured would send check for the full amount of the premiums by return mail, and insured immediately sent the check and had ample funds in the bank to meet the same before the check could have been presented in the ordinary course of the mails, the fact that at the time the check was sent insured's bank account was overdrawn did not render the check insufficient to constitute an acceptance of insured's offer."

Writing the opinion of the United States Circuit Court, it was said, by Coxe, Circuit Judge (page 353): "The unqualified acceptance by the one of the terms proposed by the other, transmitted by due course of mail, is regarded as closing the bargain from the time of the transmission of the acceptance. . . . The defendant, had it desired to do so, could have limited the time of the reinstatement of the policies to the actual receipt by it in Philadelphia of the letter and check, but this it did not do. The defendant's proposal was a plain, unequivocal agreement to reinstate the policies when the check was deposited in the mails."

It requires no argument to demonstrate that the facts in the case relied upon and the instant case are dissimilar. In the instant case, the defendant corporation demanded payment in cash. In the case from which we have quoted, the defendant corporation demanded payment by check. Had the plaintiff complied with the demand of the defendant in the instant case by sending cash instead of his check, we think Tayloe *v.* Merchants Fire Ins. Co.

of Baltimore, 9 Howard, 390, 13 L. Ed. 187, would have been controlling. In the Tayloe case, the agent of the company instructed the applicant to send his check for the premium. *Held*, that the transmission of the check by mail was a sufficient payment of the premium within the terms of the policy.

Counsel for plaintiff further contended at the oral argument that, a check having been mailed to the defendant corporation, the legal presumption was that the company received it: Tanner v. Hughes & Kincaid, 53 Pa. 289; Callan v. Gaylord, 3 Watts, 321; Whitmore v. Insurance Co., 148 Pa. 405, and many other Pennsylvania cases which might be cited. We think this well-establish principle of law is not involved in the instant case. The plaintiff's policy had been canceled for non-payment of an assessment. The defendant agreed to reinstate it if the defendant would send the amount of the assessment, to wit, $1.95, but the defendant company did not direct that it be sent by mail, nor did it agree that it should be sent by check; therefore, in writing and mailing his check, the plaintiff did not comply with the requirements of defendant corporation. Furthermore, it nowhere appears in plaintiff's statement, nor is it alleged by him, that the check was received by the defendant company and accepted by it as payment of the assessment. On the contrary, the plaintiff's statement alleges that, after the loss by fire occurred, the defendant refused to pay the loss because the assessment was not paid—see Exhibit "D" of plaintiff's statement, wherein the defendant company wrote to the plaintiff: "I have taken this matter up with our executive committee and we are compelled to take the stand that, due to the fact that your policy was canceled on account of unpaid assessment for 1925, after due notice to you by registered letter, and that the policy has not been reinstated by payment of this assessment, we cannot pay for the loss sustained recently."

It is further to be observed that there is no allegation in plaintiff's statement that the defendant received the check referred to and agreed to accept it as payment of the 1925 assessment, or that the said check was paid and returned to the bank upon which it was issued.

In Leas v. Hafer, 39 Pa. Superior Ct. 160, the affidavit of defense to an action on a promissory note which alleged that the "full sum due from the defendant to the plaintiff was paid . . . 'in checks, cash and notes,' without giving the amounts, dates, places of the alleged payments or any circumstances relating thereto, and which did not allege that the checks and notes were ever accepted by the plaintiff or paid by the defendant," was held to be insufficient. Writing the opinion of the Superior Court, it was said, by Henderson, J. (page 163): ". . . There is the further objection that it is not averred that the plaintiff accepted the checks and notes referred to in payment of the note or in part payment thereof. Nor is it stated that the notes and checks were ever paid to the plaintiff by the defendant or by any other person. To make payment absolute, there must be an express agreement by the creditor to receive a note as such. Neither the defendant's note nor the note of a third party amounts to payment on an existing debt unless accepted as such by the creditor. They are collateral security, or, at most, conditional payment of money," citing cases.

To the same effect, see opinion by Mr. Justice Mitchell, in Philadelphia v. Stewart, 195 Pa. 314; Hummelstown Brownstone Co. v. Knerr, 25 Pa. Superior Ct. 465. This question also was before the Supreme Court in Philadelphia v. Neill & Lincoln Savings and Trust Co., 211 Pa. 353, wherein it was held: "To make a note or check payment absolute, there must be an express agreement by the creditor to receive it as such, and the burden of proving this is upon the debtor;" followed by the Superior Court in Wedmore v.

McInnes, 69 Pa. Superior Ct. 220. See opinion of Kephart, J., page 222. We think these decisions are conclusive upon us.

We are of the opinion that, if this case would be tried before a jury and the plaintiff could only prove that which he alleges in his statement of claim, he would not be meeting the burden placed upon him by the last two decisions from which we have quoted, and the trial would result either in a compulsory non-suit or a directed verdict for the defendant.

It is further contended by the defendant that plaintiff did not comply with the provisions of the contract of insurance, even if held to be in force at the time of the fire. The policy provided that it was the duty of the insured to give immediate notice, in writing, to the defendant company of any loss or damage . . . and furnish a complete inventory of the destroyed, damaged and undamaged property, stating the quantity and cost of each article and the amount claimed thereon, and that the insured shall, within sixty days after the fire, unless such time is extended in writing, render to the company a proof of loss, signed and sworn to by the insured, stating certain requirements set forth in the policy; and "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the complainant shall show compliance with all requirements of this policy, nor unless commenced within twelve months next after the fire." It is contended by the defendant as a matter of law and on the allegations contained in plaintiff's statement of claim, that the plaintiff was bound to comply with the conditions of the contract as to proof of loss and has by his own admissions not done so, and has, therefore, no right of action under said contract.

It is alleged in paragraph fourteen of plaintiff's statement of claim that forthwith after the loss and damage to his property by fire, he gave notice thereof to the said defendant, whereupon said defendant sent an adjuster or representative to the premises at which the loss occurred, after which the plaintiff was informed in writing by said company that it denied liability on account of said loss on the ground that the policy of insurance had been canceled. The plaintiff attached a copy of said letter to his statement, marked Exhibit "D." Upon this letter (plaintiff's statement, Exhibit "D"), the defendant company based its refusal to pay the loss sustained by the plaintiff to his property by fire, upon the fact that the policy was canceled on account of the unpaid assessment for 1925, and that the policy was not reinstated by payment of this assessment.

Having refused to pay the policy for the reason above stated, we think the company cannot now allege any other reason for non-payment: Simmons v. Safety Mutual Fire Ins. Co., 277 Pa. 200. We quote from the opinion of Mr. Justice Sadler, beginning on page 203: "When a definite reason for declining to pay is asserted and the plaintiff thus led to believe it the sole cause and is misled to his injury, the company is estopped from thereafter setting up a different ground: Lebanon Mutual Fire Ins. Co. v. Erb, 112 Pa. 149; Pennsylvania Fire Ins. Co. v. Dougherty, supra (102 Pa. 568); Zoller v. Hartford Fire Ins. Co., 272 Pa. 386."

In Lebanon Mutual Fire Ins. Co. v. Erb, supra, it was held: "Waiver of the proof of loss required in a policy may be inferred from any act of the insurer evincing a recognition of liability or a denial of obligation exclusively for other reasons."

See, also, opinion of Chief Justice Sterrett in McCormick v. Insurance Co., 163 Pa. 184, 193. In this case, it was held: "Refusal of an insurance company to pay a loss on a specified ground estops it from asserting other ground relieving it from liability of which it had full knowledge, where the insured

has incurred expense and brought suit in the belief that the only objection was that stated."

We think this ruling applies particularly to the case at bar. The plaintiff promptly notified the defendant company of his loss by the destruction of his property by fire. The company sent an adjuster to examine the premises. It thereafter notified him it would not pay the policy for a specific reason, whereupon he incurred the expense of bringing suit to establish his claim. We think the company is now estopped from setting up any other defense to the plaintiff's claim than that mentioned in its letter attached to plaintiff's statement and marked Exhibit "D." We cannot, therefore, sustain the questions of law raised in the defendant's affidavit of defense under paragraphs three, four, five and six.

We find nothing in the carefully prepared supplemental brief of plaintiff's counsel which moves us to alter the views we have hereinbefore expressed or to require any further discussion.

We are of the opinion, therefore, that the plaintiff's statement of claim clearly shows that the contract on which this action is attempted to be made was nullified by the acts and omissions of the plaintiff, and no sufficient facts tending to show a renewal of said contract or a waiver of plaintiff's breach have been alleged in plaintiff's statement of claim. We, therefore, sustain the contentions of defendant as found in paragraphs seven, eight and nine of its affidavit of defense, and direct that judgment be entered in favor of the defendant.

From Homer L. Kreider, Harrisburg, Pa.